In the Matter of the Accounting of JOHN T. G. FINN et al., as Trustees under the Will of DANIEL K. DE BEIXEDON, Deceased.

JOHN T. G. FINN et al., Appellants; BENNETT DE BEIXE-DON, Individually and as Trustee, Respondent.

(Argued May 22, 1933; decided June 6, 1933.)

*Henry F. Miller* and *Robert M. Miller* for John T. G. Finn et al., appellants.

*Henry F. Miller* and *Joseph C. Burrows* for Miriam De B. Penfield, appellant.

*Robert P. Griffing,* as special guardian for Madeleine De B. Penfield et al., infants, appellants.

*C. Lansing Hays* and *Joshua D. Jones* for respondent.

CRANE, J. Daniel K. De Beixedon died a resident of Suffolk county, and by his will appointed John T. G. Finn and Bennett De Beixedon trustees for his widow and five children. Letters testamentary were issued to these executors-trustees on September 30, 1919. By his will the testator directed his residuary estate to be divided into as many equal shares as would make one share for each of his five children who survived him, each of said shares to be held in trust for each of such children and to be transferred and set over to such child when he or she should attain the age of forty years. The trusts were established and thereafter two of the children, Edith De Beixedon Barnes and the said Bennett De Beixedon, having attained the age of forty years, their trusts terminated and the principal was paid to them respectively. The trusts for the other three children still remain in existence. The last accounting was settled by a decree on the 28th day of October, 1929, wherein it appeared that two pieces of real property left by the testator had been sold at a large profit. The Manhattan property gave to each trust a profit of $70,750, while the Atlantic avenue (Brooklyn) property showed a profit of $14,452.23 to each trust. The total profit to each trust on sales of real estate, as shown in this 1929 accounting and on which trustees' commissions were computed, was, therefore, $85,202.23. The profit was figured by the difference between the value of the real estate as taken for tax purposes in 1919 and the amount for which it was sold.

Bennett De Beixedon, a son of the testator, a beneficiary under this will, and one of the executor-trustees, undertook to prepare the income tax returns after October of 1929, the date of the last accounting. He conceived the idea that the return need not be made for all of this profit as the estate would be justified in fixing the value of the

real estate at a higher figure than that given for the estate tax. In other words, that it would be permissible to show that the actual value of the real estate at the time of the testator's death was greater than the amount fixed for the estate tax. This of course would reduce the actual profit received upon the sale. He consulted tax experts and procured an appraisal. He and his associate co-trustee, Finn, each consulted lawyers who apparently worked together in arriving at some such result as was proposed by De Beixedon. The United States government not only refused to accept a reduced profit but imposed a penalty for delay in making the return and the payment of the tax, which penalty however was subsequently revoked. Finn, the co-trustee, became justifiably anxious over these actions upon the part of De Beixedon and questioned his authority to incur expenses for lawyers and experts in thus seeking to reduce the income tax. His anxiety resulted in this present proceeding wherein Finn, as co-trustee, calls to account De Beixedon, the other trustee, and asks in his petition that the expenses thus incurred be disallowed.

The issue upon this accounting is over the necessity or legality of these expenses and disbursements incurred for this purpose by De Beixedon. They are challenged by Finn and answered by De Beixedon. The evidence in the case bears upon the efforts made to reduce the income tax and the employment of appraisers, experts and lawyers for this purpose or in connection with the removal of the penalty. The petition sets forth the preparation of the income tax returns by Bennett De Beixedon and states: " In the matter of said income tax returns the said Bennett De Beixedon incurred expense for an appraisal over the objection of your petitioner, and afterwards, without the consent of your petitioner employed an attorney named James H. Hickey in relation to such income tax matters, after complications had developed, with the result that your petitioner was constrained for the protection of the

trust estates to employ an attorney, to wit, Thomas J. Evers, in order to safeguard the interests of said trust estates." The petition then states that both Hickey and Evers have rendered bills which the petitioner questions and further sets forth the penalty of twenty-five per cent incurred by the delay of De Beixedon in filing the return which necessitated the petitioner's employment of Henry F. Miller, an attorney, to reopen the matter and to procure a remission of the penalties. "The errors and delays," concludes the petition, "as above referred to in the matter of said income tax returns have resulted in loss and damage to the trust estates, and your petitioner desires that his co-trustee, the said Bennett De Beixedon, should make an accounting of his acts and proceedings with respect to said income tax returns."

De Beixedon answered this petition by filing an account stating that he believed the appraisal of 1919 to be erroneous and did not reflect the true value of the real estate as of that time and that he believed it was possible to have the appraised valuation changed and amended by raising the same which would materially lessen the amount of the profit and of the tax which the trustees would have to pay. He further alleges that his co-trustee was fully cognizant of these efforts and acquiesced therein. He sets forth the employment of Hickey and of the attorneys of his co-trustee and their conferences at the United States Tax Department in Brooklyn and the New York State Tax Department in Albany and furthermore sets forth the payment of $500 to one J. N. Kalley for the appraisal made of the real estate. The hearings before the Surrogate bear directly upon the issue thus framed.

Were these expenses and fees incurred by the two trustees due to the negligence and carelessness or wrong doing or improper conduct of De Beixedon? If they were they could not legally be charged against the estate and should have been charged personally to De Beixedon. (Jessup's Surrogate's Practice [8th ed.], §§ 1173 and 1174;

Surrogate's Court Act, §§ 222 and 285; *O'Reilly* v. *Meyer*, 4 Dem. 161; *Matter of Frazer*, 92 N. Y. 239, 247; *Matter of Maxwell*, 218 N. Y. 88.) The Surrogate allowed all these expenses and directed that they be paid out of the estate, fixing the allowances for all the lawyers and for the guardian. At the same time on motion of the special guardian he removed De Beixedon as trustee, stating, "As a result of his negligence in not making returns on time and incorrect when made, undue expense has been caused the Trusts and this contest. Lawyers had to be employed and were employed to correct the situation."

The findings necessarily are inconsistent. If De Beixedon's negligence had caused unnecessary expense to the estate he should pay it, not the estate. The Surrogate in charging all these matters to the estate must have found them to be proper charges. This seems to be the fair and reasonable inference to be drawn from his decree. Executors and trustees are liable individually for the debts incurred in behalf of the estate, but when they are proper and legal charges the Surrogate will order them paid out of the estate on the accounting. (*Austin* v. *Munro*, 47 N. Y. 360, 366.) Executors and trustees are supposed to be surcharged with illegal and unjustifiable expenditures. The Surrogate probably considered that no money was misappropriated by De Beixedon and that his acts at most were in behalf of the trusts to reduce the income tax if possible. While perhaps ill-advised and unwise, the attempt may not in the eyes of the Surrogate have amounted to such negligence as to justify mulcting De Beixedon with this indebtedness. The fact remains that the Surrogate must have come to this conclusion in order to make these allowances payable out of the estate.

The findings, therefore, of the Surrogate regarding these items of the account are at least inconsistent with the finding of such negligence upon the part of De Beixedon as justified removal. The Appellate Division in the face of inconsistent findings apparently followed the rule which

requires the court to accept as true the findings most favorable to the appellant (*Parsons* v. *Parker*, 159 N. Y. 16), and reinstated the trustee.

That court, however, was of the opinion that the co-trustee could not be removed in this accounting proceeding as no petition had been filed for that purpose under sections 99 and 100 of the Surrogate's Court Act. As the cause assigned for removal did not come under section 104, the Appellate Division was of the opinion that a petition must be filed in every case for the removal of an executor or trustee and that it must take the form specified in section 100. This we think is too narrow a view to take of the Surrogate's Court procedure or of the Surrogate's powers. Where all the facts which could be alleged in a petition under section 100 pertaining to causes for removal as embodied in section 99 are alleged and set forth in a petition for an accounting, and being put in issue, are tried out in that proceeding, all parties in interest being before the court, the Surrogate has power under section 40 of the Surrogate's Court Act to make a decree removing an executor or trustee as the case may be. The misconduct specified in section 99 appearing in the accounting proceeding and being tried as an issue of fact can and may result in a decree of removal without the unnecessary formality of starting a new proceeding by petition solely directed to the removal for misconduct. In other words, an accounting and removal proceeding may be embodied in the same petition as in this case although the prayer for relief may not specifically refer to removal. Sections 99 and 100 have reference in the main to proceedings taken solely for the removal of an executor or trustee but do not in any way limit the equity powers of the Surrogate under section 40 to reach the same result where the petition in an accounting proceeding and the accounting itself show the misconduct upon the part of the executor or trustee for which he should be removed, and which has been litigated in that proceeding. (*Gould* v. *Gould*, 203 App. Div. 807; Perry on Trusts [3d ed.], § 280.)

While we do not agree, therefore, with the reasons assigned by the Appellate Division, we affirm the result reached by that court. The Surrogate having found that the expenses incurred by the executor in an attempt to reduce the income tax were properly chargeable to the estate, he could not remove the executor upon contrary findings that he wasted or improperly applied the assets of the estate or improperly managed or injured the property committed to his charge.

The order should be affirmed, with costs to all parties filing briefs payable out of the estate. (See 262 N. Y. 638.)

POUND, Ch. J., LEHMAN, O'BRIEN and CROUCH, JJ., concur; KELLOGG and HUBBS, JJ., not sitting.

Order affirmed, etc.