Shiehtag, J.
The appellant appeals from so much of a decree of the Surrogate’s Court as sustained the objection of the respondents to the payment by the trustee under the will of Cortlandt F. Bishop, of $7,868.70 for counsel fees and dis-' bursements in connection with the successful defense of an action brought against the appellant the New York Trust Company, individually, by the two life beneficiaries, Mrs. Bishop and Mrs. Falcke, in the Supreme Court, New York County. In substance, and this will be developed more fully later, the plaintiffs charged in the Supreme Court action that the defendant was guilty of false and fraudulent representations both *110 before and after it qualified as trustee under the will of Cortlandt F. Bishop, to the damage of the trust fund in the Bishop estate of an amount in excess of $500,000, and that the defendant breached its fiduciary duties as trustee when it consented to or failed to oppose the settlement for $515,000 in cash and property of a $1,000,000 claim lodged against the Bishop estate by his daughter, Mrs. Berle. The plaintiffs in the Supreme Court action sought a money judgment for their proportionate interest in the damage thus inflicted on the trust estate.
Two questions were presented for the consideration of the Surrogate’s Court: whether the expense of defending the Supreme Court action was a proper charge against the trust fund and, if so, whether that expense should be allocated to the principal of the trust or to the income of the life beneficiaries who brought the action.
The learned Surrogate held that since the Supreme Court action was directed against the trust company in its individual capacity, the expense of its successful defense should not be charged to the trust fund. He deemed the problem analogous to suits against public officials and concluded that a fiduciary sued in its individual capacity had no more right to indemnification than the public official who successfully defends against charges arising out of the conduct of his office. We do not agree with that conclusion.
Before analyzing the issues involved in the Supreme Court action, certain background facts which the parties to that action there agreed upon may be here recited:
“ From about September 1925 until his death on March 30, 1935, the late Cortlandt F. Bishop was the sole trustee of a trust created by the will of Mathilda W. White. He was the sole life beneficiary of that trust, and his daughter Beatrice Bishop Berle was the sole remainderman. An important asset of that trust was a one-half interest in real estate on Sixth Avenue between 53rd and 59th Streets. Mr. Bishop was the owner of the other undivided one-half interest in the same real estate which had passed to him under the will of Mrs. White. Mr. Bishop and his wife also owned other real estate in that locality. The real estate was conveyed to a corporation, CortlandtBishop, Inc. In exchange for the real estate so conveyed, Cortlandt F. Bishop received a majority of the stock of that corporation, and Cortlandt F. Bishop as Trustee of said trust under the White Will received a minority of such stock, namely, 5,670 shares.
*111 “An apartment building was then erected with money borrowed upon the mortgages upon the real estate. The building proved financially unsuccessful, and about 1934 the mortgages were foreclosed and the real estate was lost to Oortlandt Bishop Inc., and its stock became substantially worthless.
“After the death of Oortlandt Field Bishop, on March 30, 1935, his daughter Mrs. Berle, asserted a claim in writing that her father had committed breaches of trust, which wrongful acts had caused her a loss as remainderman under the White Will of at least $850,000 and perhaps as much as $1,050,000, and that her father’s estate should be compelled to make good that sum to her. That claim of Mrs. Berle against her father’s estate never was tried out. It was compromised and settled in 1938 by the payment to her from her father’s estate in cash and real property amounting to $515,000. Under Mr. Bishop’s will, Mrs. Bishop, his widow, receives one half of the income of the trust of the residuary or remainder of the estate during her lifetime. Mrs. Falcke receives the other half of the income, and upon Mrs. Bishop’s death one-half of the trust is bequeathed outright to Mrs. Falcke, and the other half among various charities. The payment of that $515,000 to Mrs. Berle, of course, decreased the estate of which the plaintiffs were beneficiaries. ’ ’
The record further shows that following Mr. Bishop’s death, on March 30, 1935, his executors, including among them Amy Bend Bishop and Edith Nixon (now Mrs. Shirley Falcke), accounted for Mr. Bishop’s actions as trustee of the Mathilda White trust. Objections to the account were filed by Mr. Bishop’s daughter Beatrice Bishop Berle. Following extended negotiations, an agreement of settlement, dated April 11, 1938, was executed by the interested parties under which the Bishop executors agreed, subject to the approval of the court, to pay $515,000 in cash and properties in settlement of Mrs. Berle’s objections. All of the parties were fully represented by counsel. A Referee had been appointed in the Mathilda White estate to hear the objections. In view of the compromise agreement entered into by all of the parties, which agreement was subject to the approval of the court in the Bishop estate accounting (the paying out estate), the Referee took no testimony, but recommended conditional approval of the settlement.
On or about April 11, 1938, the New York Trust Company qualified as sole trustee under the Oortlandt F. Bishop will. By decree dated May 16, 1938, Surrogate Foley approved the terms of the settlement as adequate from the standpoint of *112 the Mathilda "White estate. Before that settlement could be consummated, however, it was necessary that it be approved also by Surrogate Delehahty, who had jurisdiction of the Cortlandt Bishop estate. The New York Trust Company was cited as an interested party in the proceedings before Surrogate Delehahiy to consider the merits of the proposed settlement. Upon the return day of the citation, June 24, 1938, all of the parties in interest, advised the Surrogate that they approved the settlement. The trust company, however, took no position, and the Surrogate thereupon adjourned the hearing until June 30, 1938. The trustee not objecting to its approval, a decree approving the settlement was thereupon entered by Surrogate Delehanty on July 6,1938.
The attorney for The New York Trust Company described, in the Supreme Court action, the participation of the trustee in the proceedings before Surrogate Delehanty as follows: “At the time of the hearing before the Surrogate on June 24, 1938, all of the parties had appeared in court in person or by counsel, and had expressed their approval of the proposed settlement. The Surrogate, in my opinion, did not make the decision of the New York Trust Company on the matter the decisive decision as to whether the settlement would be approved or disapproved. In my opinion he wished to know whether the New York Trust Company would go along with the others who represented 100% interest in both the income and principal funds by signing the stipulation and acquiescing in the settlement. Having corrected the record to that extent, I wish to state that I had been engaged in the consideration of this claim more or less continuously for several years. The results of my investigation had been made known to the New York Trust Company from time to time. The investigation of the claim was more or less completed on the date of the hearing before the Surrogate on June 24, and the only thing that remained was the decision as to the position of the trustee based upon the long investigation that had been made. After the court hearing I wrote a letter to the New York Trust Company, dated June 24, 1938. In that letter I stated ‘ In court today no one of the many interests objected to the settlement of the Berle claim.’ In fact all parties other than the New York Trust Company expressly consented to the Berle settlement. I sent to the New York Trust Company with that letter a copy of the proposed stipulation of settlement, a copy of the accounting, a copy of the memorandum prepared by Mr. Kellogg, dated *113 May 6, 1937, and a copy of Mr. Kellogg’s affidavit, sworn to January 11, 1938. Thereafter I conferred with the New York Trust Company and discussed with them the pros and cons of the proposed settlement. Under date of June 30, 1938 I wrote a further letter to the New York Trust Company with respect to the proposed settlement. After a series of conferences I was advised by the New York Trust Company that they would go along with the others and approve the settlement.”
In 1943, Mrs. Falcke and Mrs. Bishop petitioned the Surrogate’s Court in both proceedings to reopen the respective decrees approving the settlement on the ground that it had been procured by fraud and duress. These applications were denied on the merits by both Surrogates. This court unanimously affirmed both orders, which were presented on a consolidated record (268 App. Div. 759). Motions for leave to appeal to the Court of Appeals were thereafter denied by this court (268 App. Div. 894) and were dismissed by the Court of Appeals (293 N. Y. 767).
In February, 1944, after the Surrogates had refused to reopen the decrees but before the appeals had been heard by this court, Mrs. Falcke and Mrs. Bishop filed suit in the Supreme Court, New York County, against the New York Trust Company in its individual capacity. An analysis of the pleadings, including the supplemental complaint and the minutes of the trial in the Supreme Court action, clearly indicates that the plaintiffs, suing as beneficiaries under the trust set up in the will of Cortlandt F. Bishop, charged the trust company with a tortious breach of its fiduciary duty in the administration of the trust. This is shown by the allegations of the supplemental complaint and by the course which the trial took. In that connection it is here pertinent to refer to some of the statements made by counsel for the plaintiffs in the Supreme Court action:
“ I am trying to make a statement of what I conceive to be legal misrepresentation in the circumstances, and that is inseparable from the duty and obligation of this trustee, that it could make a misrepresentation not only by an affirmative statement, but by a refusal to disclose facts that it knew, or were available to them. That is my position, the complaint alleges that and the supplemental complaint alleges that, that if this company knew that there was no basis in fact or law for these objections, it was its obligation to inform these plaintiffs before they signed anything,' and it was its obligation to stop this settlement. That is my position. * * *
*114 “It is true that in the case of trustee delinquency you can always resort to a court of equity, but it is also true that in the case of a trustee delinquency that is so flagrant you can resort to the common law for relief. * * *
“ The supplemental complaint alleges a common law action or action auxiliary to the main action. It is the case of a fiduciary who is charged with the duty of careful and accurate scrutiny, an action in support of that careful and active scrutiny. * * *
“ It was all conditional, so that when the crucial time came on June. 24th and the Cortlandt Bishop accounting was before the Surrogate and the Trustee was called upon to take a stand, the Trust Company had to do that, frankly in perfect good faith and in the exercise of a care commensurate with the measure of its duty. Now, instead of that, it went through an exchange between it and its attorney or its counsel which we say was not an honest discharge of that obligation but was a pretext, was a sham, and on the basis of that sham it came into court and said, ‘ We approve of the settlement ’ implying that if the trustee whose duty it was to preserve this trust and to protect the first and most solicitous object of the decedent’s bounty, in effect represented to the Court and to them that they had examined into the facts and that the claim was a just one and that it would be advantageous to settle it on the amount named. * * *
“ Before the stipulation of settlement became effective, to make payment of $515,000 thereunder to the claimant Berle in money and property from the Estate of Cortlandt F. Bishop, it was necessary to obtain a decree of the Surrogate’s Court of New York County approving the settlement and directing the payment. To such a proceeding the defendant Trust Company was a party, and the defendant FitzG-ibbon acted therein as its counsel. By said Court they were required to determine whether the proposed settlement should be approved or disapproved.
“ The Court: No. They were required to say what their position was.
“ Mr. Doyle: Yes, sir.
“ The Court: That is a very different thing. They were required to let the Surrogate know what their position was.
‘ ‘ Mr. Doyle: I submit that that is the same as to make a determination, whether the proposed settlement should be approved or disapproved and the Berle claim contested. Without inquiring into any material facts bearing on the validity of the claim *115 not already known to them, and relying upon an alleged legal opinion, contrived in bad faith between the defendant and in pretended compliance with the requirement of the said Surrogate’s Court, the defendant Trust Company as party and the defendant FitzG-ibbon as its counsel consented in open court to the said settlement of the Berle claim, and the claimant was paid thereunder from the Estate of Cortlandt F. Bishop the sum of $515,000 in July 1938.”
The Supreme Court action was dismissed on the merits at the close of the plaintiffs’ case. In truth, so far as the record discloses, there was no basis for bringing it. In essence the charge was that the New York Trust Company, in the administration of a trust in which it had qualified as trustee, failed to do its duty. Whether the alleged wrongdoing is labeled as fraud and misrepresentation or a breach of fiduciary duty, whether the form of the action was at law or in equity, whether or not it was an attempt by indirection to attack the settlement which both Surrogates had refused to disturb, the wrong charged involved an act of the trust company in administering the trust estate. Like any other tort charged against a fiduciary, the trustee was properly sued in its individual capacity. Having been exonerated, however, the trustee is as much entitled to indemnity from the trust estate as is the fiduciary sued by a third party for personal injuries or other tort, where the trustee was not personally at fault (Kirchner v. Muller, 280 N. Y. 23, 28; Restatement, Trusts, § 247; Matter of De Beixedon, 262 N. Y. 168).
The problem here presented is in no way analogous to the situation created where public officials are called upon to defend their conduct as such in the courts. The common law gives no right of indemnity to such public officials (People ex rel. Underhill v. Skinner, 74 App. Div. 58, 62). Different considerations govern, however, with respect to fiduciaries.
The trust estate still being in the course of administration, the next question to determine is whether the legal expenses incurred in the successful defense of the Supreme Court action, conceded by all parties to be reasonable in amount, should properly be charged against the principal of the trust fund or against the interest therein of the income beneficiaries who brought the unsuccessful Supreme Court action. The entire history of the controversy involving the claim of Mrs. Berle and its settlement, some of the salient features of which have heretofore been set forth in this opinion, and the minutes of the Supreme Court trial clearly show that there were no grounds *116 for the institution of such a suit and that the charges made were so reckless and lacking in merit as to make it advisable, in our opinion, to allocate the legal expenses thereof not against the charity remaindermen who had no part in instituting the action and no interest in the outcome but against the income beneficiaries who instituted the action solely for their own benefit (Matter of Ungrich, 201 N. Y. 415; cf. Patterson v. Northern Trust Co., 286 Ill. 564).
The decree so far as appealed from should be reversed, with costs to the appellants and to the respondents, the charity remaindermen who have appeared and filed briefs herein payable out of the fund. Settle order.
Peck, P. J., Glennon, Cohn and Callahan, JJ., concur.
Decree, so far as appealed from, unanimously reversed, with costs to the appellants and to the respondents, the charity remaindermen who have appeared and filed briefs herein payable out of the fund. Settle order on notice.