· FRANCIS MARGESSON et al., Appellants, v BANK OF NEW YORK, Respondent. [738 NYS2d 411] —Peters, J. Appeal from an amended order of the Supreme Court (Kavanagh, J.), entered December 12, 2000 in Ulster County, which, inter alia, granted defendant's motion for summary judgment, inter alia, dismissing the complaint and judicially settling its account.

Plaintiff Francis Margesson (hereinafter plaintiff) has a life interest with a limited power of appointment in an inter vivos trust created by his mother, France Leggett, in 1950. Pursuant to the trust instrument, plaintiff is entitled to receive installment payments of the net income of the trust, as well as invasions of principal, as the trustee deems advisable. The trust agreement further empowers plaintiff to appoint trustees, when necessary, who are authorized by such agreement to, inter alia, make investment decisions. However, a trustee could not

---

retain and reinvest income over the years since the objective of the trust, as so stated, was to provide income to plaintiff as beneficiary. Defendant, along with another, became a trustee in 1989 following its merger with trustee Irving Trust Company. In 1996, at plaintiff's request, trustee Peter Van Nuys resigned, leaving defendant as sole trustee.

The trust had been predominately funded with large holdings of four common stocks. In June 1997, defendant sold a portion of the trust's holdings in these stocks and invested the proceeds in one of its proprietary investment funds. Plaintiff, then 75 years old and sole income beneficiary of the trust, protested the sale, in part, because it left him personally liable for $22,484 in capital gains tax; he demanded that defendant, inter alia, waive trust commissions to make the trust whole. Pursuant to plaintiff's request, defendant agreed to resign as trustee upon settlement of the account.

Defendant thereafter commenced a proceeding for a trust accounting in Surrogate's Court seeking, inter alia, payment of its commissions and counsel fees. Plaintiff, along with his wife and children, filed objections thereto[1] and thereafter commenced an action in Supreme Court alleging that defendant breached its fiduciary duty and engaged in negligence and conversion. Plaintiffs then moved to consolidate these matters in Supreme Court, while defendant cross-moved to either dismiss plaintiffs' action pursuant to CPLR 3211 or consolidate the matters in Surrogate's Court. Supreme Court denied defendant's motion and the matters were consolidated.

Plaintiffs filed a note of issue that included a demand for a jury trial. This prompted opposition by defendant, which alleged that, with the consolidated matter sounding in equity, plaintiffs waived their right to a jury trial on their legal claims when they moved for consolidation. Defendant thereafter moved for summary judgment and for judicial settlement of the account. Supreme Court struck plaintiffs' demand for a jury trial and granted defendant's motion by finding that it had not violated the prudent investor rule with respect to the June 1997 stock sale or with regard to its sale of a "covered call" in August 1997 as it pertained to options on GE stock.[2] Supreme Court also granted defendant's application for a

---

1. Plaintiff's children abandoned their objections to defendant's accounting and agreed to the removal of their names from the caption of this consolidated matter.

2. Although plaintiffs contended that the sale of the covered calls was an inherently unsuitable trust investment, the record reveals that they have abandoned this issue on appeal.

judicial settlement of its account, which included trustee commissions and counsel fees. Plaintiffs appeal.

Under New York's prudent investor rule, which applies to investments made or held on or after January 1, 1995, it is the "standard of conduct, not outcome or performance" (EPTL 11-2.3 [b] [1]), which must be reviewed. In determining compliance, the court must view the "facts and circumstances prevailing at the time of the decision or action of a trustee" (*id.*); to the extent that the trustee acted in substantial compliance with such standard or in reasonable reliance on the provisions of the governing instrument, no imprudence will be found (*id.*). Hence, the trustee is guided to consider the following:

"(A) [the] overall investment strategy to enable the trustee to make appropriate present and future distributions to or for the benefit of the beneficiaries * * * in accordance with risk and return objectives reasonably suited to the entire portfolio;

"(B) * * * the expected tax consequences of investment decisions or strategies and of distributions of income and principal, the role that each investment or course of action plays within the overall portfolio * * *, and the needs of beneficiaries (to the extent reasonably known to the trustee) for present and future distributions authorized or required by the governing instrument; [and]

"(C) to diversify assets unless the trustee reasonably determines that it is in the interests of the beneficiaries not to diversify, taking into account the purposes and terms and provisions of the governing instrument" (EPTL 11-2.3 [b] [3]; *see*, *Matter of Saxton*, 274 AD2d 110, 118).

Here, the trust corpus included large holdings of four highly appreciated stocks. Because a sale of these grantor-owned stocks would result in substantial estate tax liability, there had been a long-standing informal understanding that the trust would be managed so as to avoid unnecessary sales of these stocks. Prior to the instant sale, there was a proposal made for diversification purposes which limited sales to "odd lots" of appreciated stocks, all the while considering the tax consequences when selecting the stocks to be sold. It is undisputed that plaintiff first learned of the subject sale in June 1997, when his accountant received a statement detailing his capital gains tax liability for use in the preparation of plaintiff's income tax returns. According to defendant, the investment of the sale proceeds into the proprietary bond fund was expected to produce greater income for the trust in the amount of approximately $1,600 per year. Defendant further contended that it considered the tax consequences at the time of the sale and

that the sale was taken for the purpose of diversifying the trust's investments. Plaintiffs counter that the sale was imprudent because the projected increase in income would not recoup the capital gains loss within plaintiff's projected lifetime.

Defendant's proffer, as the proponent of the motion for summary judgment, included, inter alia, affidavits from two of its vice-presidents, Donna Daniels, in her capacity as the administrative officer for the trust, and Charles Goodfellow, in his capacity as an expert witness. These documents revealed that neither of these affiants had personal knowledge of the factors that the trust's investment officer, Chris Di Enno, considered at the time of sale. While, unfortunately, Di Enno died prior to the commencement of this litigation, the record reflects that there were other available employees in that investment group who were personally familiar with the reasons underlying the subject investment decision at that time. The record suggests that Di Enno did not have actual knowledge of plaintiff's needs as a life beneficiary as reflected in Daniels' affidavit—the trust officer responsible for routine communications with plaintiff. Instead, she suggested that Di Enno would have relied on the "income code" attached to the account when making these investment decisions. Although defendant's expert, Goodfellow, opined, in hindsight, that the stock sale fulfilled "the dual objective of decreasing market exposure and increasing the return to the income beneficiary," the only documentary evidence memorializing the underlying objectives for the sale was a February 1998 letter from Daniels to plaintiff reporting on her then-recent conversation with Di Enno.

Even discounting the import of the definitive investment strategies employed by Di Enno in his role as trust investment officer, and viewing the overall investment strategies of defendant through its established investment group structure and standardized procedures to find that it sustained its prima facie burden in establishing its compliance with the prudent investor rule, the proffer made in opposition unequivocally established the existence of a triable issue of fact through the introduction of Daniels' testimony, which confirmed that she had no conversations with Di Enno regarding this sale or plaintiff's needs as income beneficiary. Di Enno had a responsibility to communicate with Daniels, according to the testimony of Goodfellow, to ensure his understanding of the investment objectives. The affidavit of Van Nuys, a former trustee, confirmed that it was the practice for the trustee, Daniels and the investment officers assigned to the trust to communicate

regarding potential sales in connection with either an invasion of principal or when the issue of diversification arose. Since the prudence of defendant's action must be viewed at the time of the sale, rather than in hindsight (*see*, EPTL 11-2.3 [b] [1]; *see also*, *Matter of Donner*, 82 NY2d 574, 585; *Matter of Saxton*, 274 AD2d 110, 118, *supra*), a determination of whether the trustee acted prudently must await a trial. Thus, we find Supreme Court to have erred in granting defendant's motion for summary judgment at this juncture. Since the legal expenses incurred by defendant cannot be paid from the trust if found to be due to its own negligence (*see*, *Matter of De Beixedon*, 262 NY 168, 173-174), a determination on that issue must await resolution of whether defendant can be found to have complied with the prudent investor rule.

We further find that plaintiffs waived their right to a jury trial on their legal claims. Since it is well settled that consolidation of equitable and legal actions will not divest a right to a jury trial on the legal claim (*see*, Siegel, NY Prac § 128, at 213 [3d ed]; *Martell v North Riv. Ins. Co.*, 107 AD2d 948; *No. 123 Lafayette Ave. Corp. v Lipstein*, 18 Misc 2d 394, 395), Supreme Court erred in treating the consolidation of plaintiffs' action with defendant's proceeding for a trust accounting as a waiver of plaintiffs' right to a jury trial on their claims. However, since plaintiffs brought a single action joining legal claims with an inherently equitable claim for breach of a trustee's fiduciary duty (*see*, *Chauffeurs, Teamsters & Helpers, Local No. 391 v Terry*, 494 US 558, 567, 569-571; *Magill v Dutchess Bank & Trust Co.*, 150 AD2d 531, 532; *Seneca v Novaro*, 80 AD2d 909, 910; *Matter of Coyle*, 34 AD2d 612, 613; Restatement [Second] of Trusts § 199 [b]), plaintiffs have waived their right to have their legal claims tried by a jury (*see*, *Di Menna v Cooper & Evans Co.*, 220 NY 391, 395-396; *Gabbay v Ratchik*, 60 AD2d 593).

The remaining issues need not be addressed in light of our determination.

Crew III, J.P., Spain, Carpinello and Mugglin, JJ., concur. Ordered that the amended order is modified, on the law, without costs, by reversing so much thereof as granted defendant's motion for summary judgment and judicially settled its account; motion denied; and, as so modified, affirmed.