OPINION OF THE COURT
 

 Titone, J.
 

 On October 28, 1993, Doris Duke died, leaving an estate valued at over $1 billion. Duke bequeathed a large portion of her estate to charity. Bernard Lafferty, described as her assistant and confidant, was named in Duke’s will as the lone individual coexecutor of her estate. Exercising discretionary authority granted solely to him in the will, Lafferty selected United States Trust as the corporate coexecutor.
 
 [1]
 

 The dispute before this Court concerns the propriety of the Surrogate’s summary removal of both coexecutors for misconduct pursuant to SCPA 719. While section 719 grants a Surrogate the authority to summarily remove fiduciaries, we conclude that the Surrogate abused her discretion by removing these executors without affording them a hearing under the unique circumstances of this case.
 

 I.
 

 On November 1, 1993, United States Trust and Lafferty filed a petition for probate of Doris Duke’s will and were issued preliminary letters testamentary
 
 (see,
 
 SCPA 1412). In January 1995, after United States Trust and Lafferty applied for leave to distribute certain bequests, counsel for several interested parties moved for the coexecutors’ removal, submitting an affirmation containing sensational allegations of misconduct, including charges of kidnapping, murder, waste, commingling of estate assets and substance abuse by Lafferty. Because of the magnitude of the estate and the seriousness of the allegations, the Surrogate requested suggestions from counsel for "an accelerated procedure for preliminary inquiry into the is
 
 *470
 
 sue[s].” In response, the coexecutors denied the allegations and suggested that a Referee be appointed to determine whether there was any reason to take further action against them.
 

 On January 20, 1995, the Surrogate rejected the suggestion to appoint a Referee, noting "the inevitable delays, squabbles over evidence and witnesses, and time and resources which would be consumed by a formal hearing.” She also declined to authorize Dr. Demopolous, a named executor under a codicil to a prior will, to investigate the preliminary coexecutors’ conduct, citing the potential for bias. Instead, referring to SCPA 702 (8), (9) and (10), the Surrogate issued limited letters of temporary administration to Richard Kuh, an attorney in private practice, authorizing him to "examine the allegations of misconduct, examine the affairs of the estate, conduct interviews to the extent deemed necessary,
 
 and report to the Court
 
 within 45 * * * days
 
 as to the need, if any, for further ac
 
 tion” (emphasis added).
 

 In issuing this order, the Surrogate indicated that Kuh’s investigation was to be "informal and expeditious,” but otherwise gave Kuh broad discretion in the procedures he would employ to gather information. The Surrogate also advised the parties that Kuh "is not going to be a fact-finder” and noted that concerns about the Kuh report should be raised, "if they exist, during the period you have to respond to [it].”
 

 Kuh’s report and its supplement, which were filed with the Surrogate, are based on interviews with over 50 persons. However, because the report did not contain sworn statements and the identities of the witnesses contacted were largely undisclosed, counsel for the coexecutors objected to its use on due process grounds, arguing that they were unable to test its veracity. The coexecutors additionally submitted substantive written responses, which included affidavits from Lafferty and three senior officers of United States Trust, as well as from 30 estate employees, friends, physicians and advisors of Doris Duke, that raised factual disputes about the information contained in the Kuh report.
 

 On May 22, 1995, after reviewing the submissions, the Surrogate made an order summarily removing Lafferty and United States Trust. In her opinion, the Surrogate divided the Kuh report’s disclosures into two classes: those that are undisputed and those "that rely upon factual allegations that are disputed.” As to Lafferty, the Surrogate concluded that undisputed facts established four grounds for removal as a fiduciary: (1) commingling of estate and personal assets, based on his use of
 
 *471
 
 estate residences and credit cards; (2) waste of estate assets, shown by his unauthorized use and destruction of Duke’s Cadillac; (3) improvidence and want of understanding, shown by Lafferty’s lavish personal spending habits and limited literacy; and (4) substance abuse. As to United States Trust, the Surrogate concluded that it had been guilty of misconduct in failing to "rein in” Lafferty’s misconduct. Further, according to the Surrogate, United States Trust created a conflict of interest by giving Lafferty an unsecured loan of approximately $825,000, and had also engaged in its own acts of waste by retaining the services of nonresident alien employees and thereby incurring interest and penalties to be charged to the estate. The Surrogate concluded that "the full panoply of undisputed actions demonstrates such a serious lack of understanding of appropriate fiduciary responsibility that immediate removal of both fiduciaries is warranted as a matter of law.” The Surrogate replaced Lafferty and United States Trust with Alexander D. Forger, an attorney, and Morgan Guaranty Trust Company as the temporary individual and corporate co-executors.
 

 A divided Appellate Division affirmed. Although the majority rejected the Surrogate’s characterization of the facts on which she relied as "undisputed,” it concluded that summary removal was proper because "the unfitness of the coexecutors was established by a combination of documentary proof and the coexecutors’ own concessions,” and that no triable issue of fact was raised by the totality of the submissions. (220 AD2d, at 241.)
 

 Finding merit in the position taken by the coexecutors and the Attorney-General, who represents the charitable beneficiaries of Duke’s will, the two-Justice dissent concluded that removal of the designated executors without an evidentiary hearing was an extraordinary and unwarranted measure since "it has yet to be established that the estate has sustained any loss, much less been placed in jeopardy.” (220 AD2d, at 244.) The dissenters initially noted that because no hearing had been held, there was no factual record for appellate review and no "proof of serious misconduct, which the law requires to justify supplanting the decedent’s choice of executors.”
 
 (Id.,
 
 at 242.) The dissent also concluded that the language in the SCPA authorizing a Surrogate to revoke letters issued to a fiduciary "without a petition or the issuance of process” means "only that no formal notice is required to bring on a hearing for removal * * * [and] does not mean that the dismissal of an execu
 
 *472
 
 tor by the Surrogate may rest on less than compelling grounds * * * [or] that such action may be based on a record that is less than adequate to permit appellate review.”
 
 {Id.,
 
 at 243.)
 

 That two-Justice dissent on a question of law serves as the predicate for this Court’s jurisdiction of the coexecutors’ appeal. We share the dissenters’ concern over the state of the record and the Surrogate’s summary disposition of this fact-laden controversy — a view strongly echoed in the Attorney-General’s submissions to this Court. Accordingly, we now reverse and remit to the Surrogate for limited further proceedings.
 

 II.
 

 We begin our analysis with SCPA 719, which provides that a Surrogate "may”
 
 [2]
 
 suspend, modify, or revoke letters testamentary
 
 without service of
 
 process
 
 [3]
 
 on the fiduciary, in certain enumerated circumstances.
 
 [4]
 
 Respondents contend that if a fiduciary may be removed without notice under that provision, it follows that a hearing is not required before the statute’s authority may be invoked. While the Surrogate is clearly granted the exceptional authority to summarily remove executors without the formality of commencing a separate proceeding, the authority to exercise the ultimate sanction summarily is not absolute. The Surrogate may remove without a hearing only where the misconduct is established by undisputed facts or concessions
 
 (see, DePicabia v Chester Natl. Bank,
 
 50 AD2d 812;
 
 Matter of Grossman,
 
 250 App Div 503, 504), where the fiduciary’s in-court conduct causes such facts to be within the court’s knowledge
 
 (see, 2
 
 Warren’s Heaton, Surrogates’ Courts, § 20.11 [3] [a], at 20-129 [6th ed];
 
 Matter of Flaum v Birnbaum,
 
 
 *473
 
 191 AD2d 227, 228) or where facts warranting amendment of letters are presented to the court during a related evidentiary proceeding
 
 (see, Matter of De Beixedon,
 
 262 NY 168).
 

 By contrast, issuance of a decree without a hearing under section 719 will constitute an abuse of discretion where the facts are disputed, where conflicting inferences may be drawn therefrom
 
 (see, Matter of Farber,
 
 98 AD2d 720), or where there are claimed mitigating facts that, if established, would render summary removal an inappropriate remedy. In other words, where it is clear that the full factual picture has not yet been painted, "immediate action should [not] be taken without the fiduciary being heard” (2 Warren’s Heaton,
 
 op. cit,
 
 § 20.11 [3] [c], at 20-130). In such circumstances, an opportunity to be heard and to present or contest relevant evidence would properly follow
 
 (see, e.g., Matter of Irwin,
 
 60 AD2d 885;
 
 Matter of Bosco,
 
 106 Misc 2d 454).
 

 Upon finding a fiduciary’s violation of section 719, the Surrogate is vested with discretion to select among a number of courses of relief, the most serious of which is revocation of letters and removal of the fiduciary
 
 (see, Stolz v New York Cent. R. R. Co.,
 
 7 NY2d 269, 273). Removal of a fiduciary constitutes a judicial nullification of the testator’s choice and may only be decreed when the grounds set forth in the relevant statutes have been clearly established
 
 (Matter of Leland,
 
 219 NY 387, 392). Accordingly, the rule has long prevailed that "courts are required to exercise the power of removal sparingly and to nullify the testator’s choice [of executor] only upon a clear showing of serious misconduct that endangers the safety of the estate; it is not every breach of fiduciary duty that will warrant removal [of an executor]”
 
 (Matter of Israel,
 
 64 Misc 2d 1035, 1043, citing
 
 Matter of Braloff,
 
 3 AD2d 912,
 
 affd
 
 4 NY2d 847).
 

 III.
 

 In this case, the fiduciaries had notice that the Surrogate was considering action pursuant to SCPA 719. Thus, the pivotal question here is whether the Surrogate’s failure to afford the coexecutors a hearing prior to their removal constituted an abuse of discretion. We conclude that it was.
 

 Turning first to the procedures employed by the Surrogate here, we preliminarily note that the propriety of the Surrogate’s novel grant of limited letters testamentary to Mr. Kuh, under the authority of SCPA 702, is not before us since
 
 *474
 
 an appeal by the coexecutors on that issue was abandoned. However, even assuming that Kuh’s appointment was technically permitted under the broad language of section 702 (10)
 
 [5]
 
 for preliminary investigative purposes, the information contained in the Kuh report is woefully inadequate as a predicate for judicial action. The report contained no sworn statements, and its sources remained largely undisclosed. As a consequence, it had little worth as an evaluative tool, since it did not give the Surrogate a record from which to make her own factual findings. Notably, in this case, the Surrogate had not delegated her fact-finding authority pursuant to SCPA 506, which provides for the appointment of a Referee — a process that includes certain evidentiary safeguards.
 
 [6]
 
 Although her reasons for doing so — concern for delay and waste — are valid in the abstract, the interests of procedural fairness would have been better served if the Referee-appointment authority had been invoked.
 
 [7]
 
 When a Referee is appointed, the compensation and allowable expenses are fixed by statute (see, SCPA 506 [5]). Although the Kuh report yielded little usable information, the costs associated with its completion by a private attorney, including disbursements and experts’ fees, are likely to exceed those associated with a reference, and have been estimated at over $600,000.
 

 Additionally, the Surrogate did not delineate the function that the report would serve. In fact, the terms of the limited letters issued to Kuh, which directed him to alert the Surrogate "to the need, if any, for further action,” themselves suggested that something more — such as a hearing — would take place before the Surrogate would act on the information Kuh gathered.
 

 Given that fundamentally flawed procedure, the information contained in the Kuh report — upon which the Surrogate pri
 
 *475
 
 marily relied in removing the coexecutors — provided an insufficient factual predicate for the grant of summary relief pursuant to SCPA § 719. Similarly, given the uncertainty surrounding the Surrogate’s intended use of the Kuh report, the coexecutors’ failure to dispute certain allegations contained therein did not automatically present the Surrogate with "conceded” facts that obviated the need for a hearing. On the contrary, the coexecutors persistently disputed the disclosures contained in the report, and sought an opportunity to defend themselves. Additionally, none of the traditional circumstances that justify the grant of summary relief were present here: the Surrogate had no independent knowledge of any statutory grounds for removal, no facts had been presented to the Surrogate in a related evidentiary proceeding, and the Kuh report did not provide a proper factual predicate for such ex parte judicial action. Indeed, the Attorney-General strongly urges this Court to reject the Surrogate’s summary disposition and remit for further proceedings, citing the inherent unfairness of removing fiduciaries without proper pleadings or a hearing on these contested facts.
 

 To be sure, certain facts establishing sanctionable misconduct, such as waste, were contained in the coexecutors’ own affidavits and documentary proof submitted to the Surrogate in response to the Kuh report. Nonetheless, given the numerous factual controversies concerning the coexecutors’ fitness for their posts, and the fact that the fiduciaries were denied any reasonable opportunity to present mitigating facts that may have affected the Surrogate’s choice of relief, summary removal of the testatrix’s chosen executors under SCPA 719 without a hearing and based largely on the untested hearsay assembled here was an abuse of discretion. Accordingly, we reverse and remit for further limited proceedings to address whether any of" the disputed allegations of misconduct against the fiduciaries are established by a proper factual predicate, and, if substantiated, whether removal or some other less severe sanction may provide adequate redress for those wrongs
 
 (see, Matter of Vermilye,
 
 101 AD2d 865, 866).
 

 Given the serious allegations of misconduct that have been levelled against both coexecutors and have taken the probate proceedings off course for a period in excess of two years,
 
 [8]
 
 the Surrogate’s decision, in the interests of efficiency and economy,
 
 *476
 
 to determine the dispute without a hearing, though erroneous, was understandable. On remittal, those goals would best be served by conducting a limited evidentiary hearing that is tightly controlled by the Surrogate and confined to particular factors, which, if fairly proven, would warrant any sanction within the Surrogate’s extensive powers.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs payable out of the estate, and the matter remitted to Surrogate’s Court, New York County, for further proceedings in accordance with this opinion.
 

 Chief Judge Kaye and Judges Simons, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order reversed, with costs to all parties appearing separately and filing separate briefs payable out of the estate, and matter remitted to Surrogate’s Court, New York County, for further proceedings in accordance with the opinion herein.
 

 [1]
 

 . The will also contained a default provision appointing United States Trust as corporate executor in the event that Lafferty did not exercise his appointment power. Under the will, Lafferty also had exclusive authority to remove the corporate coexecutor.
 

 [2]
 

 . The term "may [w]hen used in [the SCPA], in relation to an act to be performed by the court, means in the discretion of the court” (SCPA 103 [38]).
 

 [3]
 

 . "Process” is defined as "[c]itation, order to show cause, subpoena and any other mandate of the surrogate’s court by which jurisdiction is obtained of a party” (SCPA 103 [43]).
 

 [4]
 

 . SCPA 719 expressly permits a decree changing letters testamentary to be issued without process where there has been a default in appearance or disobedience to a court order (SCPA 719 [1], [3]), where the fiduciary has absconded and cannot be served
 
 (id.,
 
 719 [2]), where the fiduciary has been convicted of a felony, judicially committed or declared incompetent
 
 (id.,
 
 719 [6]), where he commingles estate funds with his own
 
 (id.,
 
 719 [7]), or "[w]here any of the facts provided in [section] 711 are brought to the attention of the court.”
 
 (Id.,
 
 719 [10].)
 

 [5]
 

 . Pursuant to SCPA 702 (10), the Surrogate may grant limited letters testamentary authorizing the holder to engage in "any other purpose or act deemed by the court to be appropriate or necessary in respect of the affairs of the estate, the protection thereof or to the proper administration thereof.”
 

 [6]
 

 . A Referee may be appointed "to report to the court upon the facts or upon a specific question of fact or upon the law and the facts” (SCPA 506 [1]) The Referee conducts a reference "in the same manner as a court trying an issue without a jury”
 
 (id,.,
 
 506 [3]). Within 30 days of the completion of the hearing, the Referee shall file a report containing "the facts found and the conclusions of law”
 
 (id.,
 
 506
 
 [1],
 
 [3]).
 
 A transcript of the testimony taken at the hearings and exhibits shall be filed with the Referee’s report (id.,
 
 506 [3]).
 

 [7]
 

 . The parties do not claim that any impediment prevented the Surrogate from appointing a Referee. In fact, the coexecutors requested that a Referee be appointed to investigate the allegations of fiduciary misconduct.
 

 [8]
 

 . Unfortunately, these proceedings to litigate the propriety of the coexecutors’ conduct and their summary removal will ultimately deplete the estate’s residuary funds by the enormous sums expended in connection with
 
 *476
 
 the provision of legal representation for the coexecutors and the completion of the Kuh investigation. What has been lost in the process is the interest of the beneficiaries — mostly charities — whose bequests have thereby been diminished.