OPINION OF THE COURT
Joan S. Kohout, J.
A petition has been filed by the Monroe County Department of Social Services requesting that letters of guardianship granted to Gloria P. concerning her niece Christian Eve P., also known as Christina,[1] be revoked. The petition requests revocation of the letters because Christina has been in foster care for two years and the agency’s goal is for adoption by her foster mother.
Grace P., Christina’s mother, and the guardian, Gloria P., have moved to dismiss the petition on the ground that the Department of Social Services lacks standing to interfere with their private guardianship arrangement that has been in effect since Í986.
Research reveals no cases brought by a social services agency asking to terminate a court-ordered private custody or guardianship arrangement to which the agency was not an original party. An analysis of the authorized jurisdiction of Family Court and the pertinent statutes, however, leads to the conclusion in this case that the Department of Social Services has neither the necessary standing nor a legitimate reason to request that the guardianship be revoked.
A. Family Court Jurisdiction
, Family Court is a court of limited and specialized jurisdiction possessing only such powers as the Legislature and the Constitution enumerate. (NY Const, art VI, § 13; see, e.g., Matter of Borkowski v Borkowski, 38 AD2d 752 [2d Dept 1972].) Family Court Act § 661 grants Family Court jurisdiction over cases involving guardianship of the person of minors and provides that the Surrogate’s Court Procedure Act (SCPA) applies to such cases to the extent it does not conflict with the Family Court Act.
On April 8, 1986 the Honorable Charles L. Willis granted guardianship of Christina P. to her aunt Gloria P. At that time, Christina was four months old, having been born on December 24, 1985. Christina’s mother, Grace P., consented to *955 the guardianship.[2] No request to revoke the guardianship has ever been filed by either the guardian or the parent.
While no specific authority or procedure to revoke a guardianship is contained in the Family Court Act, courts have regularly interpreted the Family Court’s jurisdiction to extend to requests for the modification or revocation of letters of guardianship. (See, e.g., Matter of Charles C. v Barbara M., 254 AD2d 778 [4th Dept 1998]; Matter of Williams v Dunston, 202 AD2d 681 [2d Dept 1994].)
B. Statutory Scheme
SCPA article 17 sets out the procedure for creation of a guardianship of the person of a child. Parents, as well as any person having legal custody, must be noticed in the proceeding. (SCPA 1705 [1].)
The statute establishes a best interest test requiring the court to grant the guardianship petition if it is “satisfied that the interests of the infant will be promoted.” (SCPA 1707 [1].) Courts, however, have required a showing of “extraordinary circumstances” prior to considering a child’s best interests in cases where nonparents seek guardianship. (See, Matter of Charles C. v Barbara M., supra; see also, Matter of Bennett v Jeffreys, 40 NY2d 543 [1976].)
SCPA article 17 does not contain a procedure for the revocation of letters of guardianship. The general procedure to revoke or modify any letters granted by Surrogate’s Court is covered by SCPA 711, which permits such a petition to be filed by a “creditor, person interested, any person on behalf of an infant or any surety on a bond of a fiduciary.” “Person interested” is narrowly defined by SCPA 103 (39) as any “person entitled or allegedly entitled to share as beneficiary in the estate or the trustee in bankruptcy or receiver of such person.” Although not specifically stated in the SCPA, any party to the original guardianship action presumably has the right to ask to modify or revoke the order.
An alternative ex parte proceeding to revoke letters is provided in SCPA 719. The Court of Appeals, however, has cautioned against the use of this provision except in exceptional cases and then only after a hearing, unless the facts are *956 uncontested. (Matter of Duke, 87 NY2d 465, 472-473 [1996].) The Department of Social Services, however, did not seek to proceed under this section. Moreover, no urgent circumstance was presented here that would warrant an ex parte order.
C. Present Cáse
In this case, the Monroe County Department of Social Services argues that it has standing to request that the letters of guardianship be revoked because Christina is in foster care. The petition states that the purpose of the proceeding is to further the goal of adoption of Christina by her foster parent and revocation of guardianship is needed because a legal guardian’s consent to any adoption is required by law. (Domestic Relations Law § 111 [1] [i].)
The court takes judicial notice and incorporates by reference the findings and decision recently made in the companion extension of placement case (docket No. N-282/283-97M) concerning Christina, most notably the change in the agency long-term plan for this child from adoption to adult residential care.[3] The court also takes judicial notice that the Department of Social Services has withdrawn the petition to terminate Christina’s mother’s parental rights (docket No. B-101/102-99), which is cited as a basis for the revocation petition.
Consequently, not only does the Department of Social Services fail to fall within one of the enumerated categories of persons who may file to revoke guardianship, it was not an original party to the case and has failed to show a reason why it should be permitted to pursue the petition.
Christina resided with Gloria P. from infancy through 1997. Although the long-term plan for Christina is now adult residential care, a service plan is in place aimed at assisting Gloria P. to obtain the needed skills to care for this demanding youngster. Both Gloria P. and the child’s mother desire the guardianship to continue with the hope that Christina may return to Ms. P.’s care in the future. Even if that is not possible, Gloria P. has been and continues to be committed to *957 Christina and the only relative who is able to advocate for her.
For all of these reasons, the motion to dismiss is granted and the letters of guardianship continued.

. Although the letters of guardianship refer to the child as Christian, the parties all call her Christina.

. In the course of the various proceedings involving Christina the court took testimony from Grace P. concerning the circumstances of Christina’s birth. Based upon that testimony the court determined that the identity of Christina’s father is unknown.

. As noted in the extension of placement decision, Christina, who is now 14 years old, has significant developmental disabilities that require specialized care. Her aunt, Gloria P., continues to desire her return home to her. Christina’s mother, Grace P., is unable to care for Christina because she resides in a family care home due to her own disabilities, but she regularly visits with her daughter.