Matter of McNeil (2024 NY Slip Op 06259)

Matter of McNeil

2024 NY Slip Op 06259

Decided on December 12, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 12, 2024

CV-23-1371
[*1]In the Matter of the Estate of Richard J. McNeil, Deceased. Michael J. McNeil, Appellant; Susan B. McNeil, as Executor of the Estate of Richard J. McNeil, Deceased. Respondent.

Calendar Date:October 15, 2024

Before:Clark, J.P., Pritzker, Lynch, Fisher and Powers, JJ.

Law Office of Sharon M. Sulimowicz, Ithaca (Sharon M. Sulimowicz of counsel), for appellant.
Hinman, Howard & Kattell, LLP, Binghamton (Daniel R. Norton of counsel), for respondent.

Clark, J.P.
Appeal from an order of the Surrogate's Court of Tompkins County (David C. Alexander, S.), entered June 20, 2023, which, in a proceeding pursuant to SCPA 711, among other things, denied petitioner's motion for partial summary judgment.
Petitioner, respondent and Phillip McNeil (hereinafter the brother) are the children of Richard McNeil (hereinafter decedent), who passed away testate on September 25, 2018. Respondent held power of attorney for decedent prior to his death, and decedent's last will and testament (hereinafter decedent's will) named her as the executor of his estate.[FN1] Following decedent's death, respondent commenced a proceeding to admit decedent's will to probate and for letters testamentary. Soon after, petitioner commenced a special proceeding in Surrogate's Court, seeking an order directing respondent to provide decedent's financial records from prior to his death; temporarily prohibiting respondent from acting as a fiduciary on behalf of decedent's estate; directing respondent and the brother to hold in trust any property that each received from decedent prior to his death or belonging to the estate; and issuing limited letters authorizing petitioner to obtain financial records of decedent and his estate and to commence a proceeding to recover estate assets, if deemed necessary. Surrogate's Court granted the portion of petitioner's application that sought to have respondent and the brother hold in trust any property received from decedent's estate but denied the remainder of the application without prejudice. The court also granted respondent's petition to probate decedent's will and issued letters testamentary to respondent.
While those proceedings remained active, petitioner brought a special proceeding pursuant to General Obligations Law § 5-1510 before Supreme Court (McBride, J.), alleging that respondent had breached the fiduciary duties owed through the power of attorney and seeking damages as well as a partial accounting of decedent's finances prior to his death and a stay preventing the sale of the estate's real property. Respondent moved to transfer the matter to Surrogate's Court; petitioner opposed such relief and cross-moved for partial summary judgment. Supreme Court denied respondent's motion to transfer, and it denied petitioner's cross-motion as premature, with opportunity to renew at the appropriate time. On appeal, we reversed so much of the order as denied respondent's motion to transfer, transferred the matter to Surrogate's Court and otherwise affirmed (see Matter of McNeil v McNeil, 205 AD3d 43, 45-46 [3d Dept 2022]).
During the pendency of the prior appeal, petitioner commenced a new special proceeding in Surrogate's Court seeking, among other things, to revoke the letters testamentary issued to respondent and to remove her as executor of the estate. As to the remitted matter, petitioner filed a motion seeking, among other things, partial summary judgment as to numerous transactions that occurred during [*2]decedent's life pursuant to the power of attorney, including those that were the subject of the premature motion. Respondent opposed the relief sought through the new petition and the motion. As relevant to this appeal, Surrogate's Court denied both the petition and the motion in their entirety, with prejudice. Petitioner appeals.
Summary judgment is a drastic remedy, and a movant is only entitled to judgment as a matter of law where the record evidence reflects that there remain no material issues of fact (see Barese v Erie & Niagara Ins. Assn., 224 AD3d 1174, 1176 [3d Dept 2024], lv denied 420 NY3d 903 [2024]; Matter of Martirano, 172 AD3d 1610, 1612 [3d Dept 2019]). We review such a motion "without making any credibility determinations," and we "view the evidence in a light most favorable to the nonmoving party and accord that party the benefit of every reasonable inference from the record proof" (American Food & Vending Corp. v Amazon.com, Inc., 214 AD3d 1153, 1154-1155 [3d Dept 2023] [internal quotation marks and citations omitted]; see EDW Drywall Constr., LLC v U.W. Marx, Inc., 189 AD3d 1720, 1721-1722 [3d Dept 2020]). An agent acting on a principal's behalf pursuant to a power of attorney must exercise "the standard of care that would be observed by a prudent person dealing with property of another" (General Obligations Law § 5-1505 [1]). An agent also owes the principal various fiduciary duties and must, among other things, avoid conflicts of interest, "act according to any instructions from the principal or, where there are no instructions, in the best interest of the principal" and "keep a record of all receipts, disbursements, and transactions entered into by the agent on behalf of the principal" (General Obligations Law § 5-1505 [2] [a] [1], [3]). An "agent is not liable to third parties for any act [or omission] pursuant to a power of attorney if the act [or omission] was authorized at the time and" complied with the standard of care and fiduciary duties set forth in General Obligations Law § 5-1505 (1) and (2) (General Obligations Law § 5-1505 [2] [c]; see also General Obligations Law § 5-1510).
As to petitioner's motion for partial summary judgment in the General Obligations Law proceeding, the record reflects that decedent suffered a stroke in 2004 — soon after respondent started practicing law — and he began to need respondent's help. On June 12, 2009, decedent executed a statutory short form power of attorney granting respondent the power to act on his behalf in "each and every above written power," including, but not limited to, the powers to effectuate decedent's real estate and banking transactions, to conduct the finances affecting his personal relationships and affairs and to make gifts to decedent's children and other descendants, not to exceed $10,000 per person per year. As decedent aged, his needs grew; by 2013, decedent was no longer able to drive and became fully reliant on respondent for transportation. Decedent underwent [*3]heart surgery in 2014, and respondent was responsible for accompanying him out of state for that procedure. The brother relocated from Massachusetts to Tompkins County in 2016 to assist with decedent's growing day-to-day needs, but it is uncontroverted that respondent continued to be decedent's primary caretaker. Respondent attested that decedent moved in with her in April 2018 and remained there until he died in September 2018.
According to respondent's deposition testimony, decedent recognized that, for over a decade before his death, she had prioritized caring for him above her own personal and professional life. As such, decedent had expressed a desire to lessen the resulting financial weight, so he routinely directed respondent to use his funds to pay for joint expenses and, at times, for her separate expenses. Among other things, respondent attested that decedent would direct her to pay for the expenses associated with a house that she and decedent owned jointly, for vacations that decedent took with her or the brother, for meals at restaurants and gifts for decedent's children and grandchildren. As to other transactions, respondent stated that she conducted them with decedent's best interest in mind, as she was tending to assets that he owned or which were used for his benefit.[FN2] Additionally, the affidavits of various other individuals, including the brother and the parties' paternal uncle, reflect observations that decedent had expressed gratitude for respondent's efforts and a desire to assist her financially in return. These affiants also personally observed decedent direct respondent to use his funds to pay for various transactions; petitioner's daughter made similar observations during her deposition testimony.
On appeal, petitioner argues that he is entitled to judgment as a matter of law because the record unequivocally establishes that respondent impermissibly used decedent's funds for her own benefit. He contends that respondent's deposition testimony to the contrary is barred by the Dead Man's Statute (see CPLR 4519). Although such prohibition may operate to prevent respondent from testifying at trial about specific communications with decedent, "evidence excludable at trial under the Dead Man's Statute may be considered in opposition to a motion for summary judgment so long as it is not the sole evidence proffered" (Miller v Lu-Whitney, 61 AD3d 1043, 1045 [3d Dept 2009]; see Phillips v Kantor & Co., 31 NY2d 307, 315 [1972]; Matter of Yengle, 113 AD3d 918, 920 n 2 [3d Dept 2014]). Here, respondent's statements about the various manners in which decedent directed her to use his funds was further supported by the observations set forth in the affidavits of various other witnesses and by the deposition testimony of petitioner's daughter and, as such, Surrogate's Court properly relied on that evidence in opposition to summary judgment (see Phillips v Kantor & Co., 31 NY2d at 314-315; compare Mantella v Mantella, 268 AD2d 852, 853 [[*4]3d Dept 2000]). Having reviewed the voluminous record evidence in the light most favorable to respondent, according her the benefit of every reasonable inference and making no credibility determinations, material questions of fact remain as to whether respondent engaged in the challenged transactions at decedent's direction or in his best interest, or whether respondent is entitled to compensation pursuant to services provided to decedent during his lifetime (see Phillips v Kantor & Co., 31 NY2d at 314-315). Surrogate's Court thus properly denied petitioner's motion for partial summary judgment, but it erred in treating said denial as an ultimate determination on the merits of petitioner's General Obligations Law proceeding. As such, we reverse the portion of the order which denied that petition with prejudice and remit the matter to Surrogate's Court for an evidentiary hearing.[FN3]
Petitioner's contentions regarding the denial of his application to revoke the letters testamentary issued to respondent and remove her as the executor of decedent's estate do not require extended discussion. "The removal of a fiduciary . . . is equivalent to a judicial nullification of the testator's choice and may only be decreed when the grounds set forth in the relevant statutes have been clearly established" (Matter of Heino, 186 AD3d 1216, 1218 [2d Dept 2020] [internal quotation marks and citation omitted]; see SCPA 711 [1]-[8], [12]; 719; Matter of Bolen, 166 AD3d 1367, 1368-1369 [3d Dept 2018]). "Accordingly, the rule has long prevailed that courts are required to exercise the power of removal sparingly and to nullify the testator's choice of executor only upon a clear showing of serious misconduct that endangers the safety of the estate; it is not every breach of fiduciary duty that will warrant removal of an executor" (Matter of Duke, 87 NY2d 465, 473 [1996] [internal quotation marks, brackets and citations omitted]; see Matter of Collins, 36 AD3d 1191, 1193 [3d Dept 2007]). Although such a proceeding may be summarily decided, where material questions of fact exist Surrogate's Court must hold an evidentiary hearing (see Matter of Bolen, 166 AD3d at 1369-1370; Matter of Greenway, 241 AD2d 735, 736 [3d Dept 1997]; compare Matter of Chase, 44 AD3d 1180, 1182 [3d Dept 2007]).
Here, petitioner's application largely rests on the same alleged breaches underlying his motion for partial summary judgment, though he alleges that respondent was otherwise dishonest and breached fiduciary duties that she owed as the executor of decedent's estate. At this procedural juncture, however, the record on appeal does not establish petitioner's allegations as a matter of law; as such, Surrogate's Court properly declined to grant petitioner's application (see Matter of King, 147 AD3d 1286, 1287 [3d Dept 2017]). However, the court erred in denying such relief with prejudice, as a hearing is required to allow Surrogate's Court to determine whether respondent engaged in the alleged misconduct[*5]; if so, the court is ultimately "vested with discretion to select among a number of courses of relief, the most serious of which is revocation of letters and removal of the [executor]" (Matter of Duke, 87 NY2d at 473; see SCPA 713; accord Matter of Collins, 36 AD3d at 1193).
Pritzker, Lynch, Fisher and Powers, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as decided petitioner's proceeding pursuant to the General Obligations Law and his proceeding to revoke the letters testamentary issued to respondent and to remove her as executor; summary judgment denied on both matters; matters remitted to Surrogate's Court of Tompkins County for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

Footnotes

Footnote 1: The brother was named as decedent's successor agent through the power of attorney and as successor executor in decedent's will.

Footnote 2: A significant number of the challenged transactions pertain to expenditures associated with the jointly-owned house.

Footnote 3: The statutory prohibition against compensation beyond that which is specifically provided in the power of attorney (see General Obligations Law § 5-1506 [1]) is expressly limited to powers of attorney that were executed on or after September 1, 2009 (see L 2008, ch 644, § 21, as amended by L 2009, ch 4, § 1). Such prohibition does not apply to this power of attorney, which was duly executed in June 2009. Nevertheless, where an agent and a principal are related, services performed by the agent are presumed to have been "rendered in consideration of love and affection, without expectation of payment" (Mantella v Mantella, 268 AD2d at 853 [internal quotation marks and citations omitted]; see Matter of Curtis, 83 AD3d 1182, 1183 [3d Dept 2011]; Matter of Naumoff, 301 AD2d 802, 804 [3d Dept 2003], lv dismissed 100 NY3d 534 [2003]). At a hearing, the agent may rebut that presumption through a clear and convincing showing "that there was an agreement, express or implied, that the services would be compensated" (Matter of Wilson, 178 AD2d 996, 997 [4th Dept 1991]; see Matter of Curtis, 83 AD3d at 1183). Should respondent meet such burden at a hearing, the determination of whether she is entitled to receive compensation and, if so, to set reasonable compensation in light of the services performed, is left to the sound discretion of Surrogate's Court (see General Obligations Law § 5-1510 [2] [d]; Matter of Berzins, 2015 NY Slip Op 31189[U], *1 [Sur Ct, NY County 2015]; see also Mem of NY St Law Revision Comm, Bill Jacket, L 2008, ch 644 at 40 [expressing that although compensation in familial settings is intended to be rare, "the prospect of (a p)rincipal's disability or incapacity, requiring the (a)gent's time, effort, and expense over a long period of time may make compensation important"]).