Matter of Micka (Rivera) (2026 NY Slip Op 50331(U))

[*1]

Matter of Micka (Rivera)

2026 NY Slip Op 50331(U)

Decided on March 6, 2026

Surrogate's Court, Putnam County

Mole, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 6, 2026
Surrogate's Court, Putnam County

In the Matter of the Petition of Jerry Micka to revoke the Letters of Administration issued to RICHARD RIVERA and to issue letters of administration d.b.n. in the estate of Zita Rivera a/k/a ZITA MARIA RIVERA, Deceased.

File No. 2024-1/B

Anthony R. Molé, J.

The following papers were read and considered in accordance with CPLR 2219 (a) and 22 NYCRR 207.7 on the motion of petitioner Jerry Micka, by Order to Show Cause signed September 19, 2025 (mot. seq. no. 1), seeking the following forms of relief: (i) revoking the letters of administration, pursuant to SCPA 711, issued to respondent RICHARD RIVERA, the administrator, inasmuch as he excluded petitioner and other prospective distributees about a prior administration proceeding concerning the estate of Zita Rivera a/k/a Zita Maria Rivera (the decedent); (ii) ordering the administrator to file a judicial accounting; (iii) issuing letters of administration d.b.n. to either petitioner or the Commissioner of Finance of Putnam County (William J. Carlin, Jr.); and (iv) ordering the administrator to turn over all estate assets to the designated successor fiduciary(ies):
Papers:
• Petition for Revocation of Letters of Administration; Counsel's Affirmation in Support, Exhibits A-D; Proposed order to show cause (NYSCEF Doc Nos. 34, 36-41)• Citation and Order to Show Cause (NYSCEF Doc No. 42)• The Administrator's Answer to Petition; The Administrator's Affidavit in Opposition; Counsel's Affirmation in Opposition (NYSCEF Doc Nos. 45, 47-48)Upon review of the aforesaid papers,[FN1]
the Court finds, holds, and determines as follows:
[*2]I. Background
Zita Rivera a/k/a Zita Maria Rivera (hereinafter the decedent) died on October 18, 2023, when she was 63 years old. She was married, had no issue, and was survived by one sibling: her brother Richard Rivera. By Decree of this Court dated February 20, 2024, Mr. Rivera (hereinafter referred to as the administrator) was granted letters of administration, for the decedent's estate,[FN2]
without the need of a citation and due notice to any interested parties (see generally SCPA 103 [39] [defining a person interested as "[a]ny person entitled or allegedly entitled to share as beneficiary in the estate or the trustee in bankruptcy or receiver of such person"]). 
On September 18, 2025, Jerry Micka (hereinafter petitioner) commenced this proceeding, pursuant to SCPA 711, by filing a verified petition brought by order to show cause, seeking various relief: (i) revoking the letters of administration issued to the administrator inasmuch as he excluded petitioner and other prospective distributees about the prior administration proceeding; (ii) ordering the administrator to file a judicial accounting; (iii) issuing letters of administration d.b.n. to either petitioner or the Commissioner of Finance of Putnam County (William J. Carlin, Jr.); and (iv) ordering the administrator to turn over all estate assets to the designated successor fiduciary(ies).
Petitioner claims that he is the "half-nephew" of the decedent. He avers that his biological mother (Myrta Rivera Gonzalez) is the decedent's half-sister, insomuch as she and the decedent shared the same biological mother, but they had different biological fathers. Petitioner claims, as relevant here, that the administrator failed to duly notice him and several other paternal half nephews, half nieces, and half grand-nieces of the 2024 administration proceeding because the administrator did not list them as the distributees of the decedent in the petition for administration; and instead, the administrator simply listed only himself as the sole distributee. Petitioner thus urges that doing so was a blatant omission and error on the administrator's part.
The Court issued an order to show cause and citation returnable October 10, 2025.[FN3]
 The administrator's attorney and petitioner's attorney both appeared thereat.[FN4]
The Court set a briefing schedule on petitioner's Order to Show Cause. On October 30, 2025, the administrator interposed a verified answer containing three affirmative defenses in response to the petition. He also filed opposition papers to petitioner's motion. Petitioner elected not to file any reply papers and rests on his initial submissions (see generally CPLR 2214; Uniform Rules for Sur Cts [22 NYCRR]§ 207.7). 
[*3]II. Legal Analysis and Discussion
Petitioner argues that the administrator blatantly omitted him and approximately nine other distributees by failing to specifically list and identify them in the Affidavit of Heirship, dated February 12, 2024 and executed by Lizbeth H. Gannecilli (the decedent's cousin), which was used in support of the administrator's petition (see NYSCEF Doc No. 13). Relevant here, petitioner avers that the decedent's father had five children, including his mother (the decedent's half-sister), the decedent, and the administrator; that the decedent's father married three separate times; and the decedent and the administrator were children born from the decedent's father's last marriage. 
Petitioner's primary contention is that the Court ought to vacate the decree granting administration and revoke the letters issued to the administrator, inasmuch as he made "fraudulent and false representation in his [prior] application for [l]etters of [a]dministaration and the . . . Affidavit of Heirship" (NYSCEF Doc No. 36, affirmation of petitioner's counsel in support of mot ¶ 12).[FN5]
 Petitioner thus presses that the administrator's alleged conduct warrants vacatur of the decree due to "lack of jurisdiction and in the interests of substantial justice," because petitioner has made "no effort to correct the record and /or filings acknowledging [petitioner's] heirship" (id.).
In response, the administrator vehemently contests the allegations, arguments, and assertions set forth in petitioner's moving papers and petition for removal. In his affidavit in opposition, the administrator "affirm[s] that the contents" of his administration petition "were correct at the time of filing and remain so to date to the best of [his] knowledge" (NYSCEF Doc No. 47, aff of the administrator ¶ 3). The administrator stresses that neither he nor the decedent had any knowledge about petitioner's existence, who he has "never met or known" (id. at ¶ 4). The administrator denies every lying to the undersigned vis-à-vis paper submissions filed with the Court in the prior administration proceeding and rejects the notion that he blatantly omitted information in identifying the petitioner in the previous proceeding (see id. at ¶ 5). The administrator avers that he and the decedent's father abandoned the family and relocated to Puerto Rico when the decedent was about nine years old; that he ceased all contact with the decedent and the administrator after his relocation; that the decedent did not have any relationship with any of the paternal relatives; and that the administrator had never met or spoken with any of them (see id. at ¶¶ 6-7). 
In his affidavit, the administrator gives an account of his immediate and extended family, noting that his mother never remarried. He chronicles some of his interactions with the decedent until her death in 2023 from lung cancer stating, among other things, that he and the decedent "remained close" until her death (id. at ¶ 8). The administrator concludes his affidavit by stating that no one from his father's side of the family ever directly contacted him or the decedent "[t]hroughout my entire life" (id. at ¶ 19) — adding further that petitioner and the other potential distributees are "complete strangers" who are attempting to "make a claim" to the decedent's estate, which is "deeply distressing and offensive to [him] and [his] family" (id.). 
Moreover, the administrator argues in opposition that petitioner's bare submissions have not established proof of kinship since he did not adduce any concrete evidence in support of his petition. The administrator's main gripe is that petitioner's removal application and submissions are bereft of evidence to summarily grant the relief requested. He takes exception to petitioner's primarily rely on a website search from "familysearch.org," which was allegedly done by the decedent, claiming that it does not constitute sufficient evidence to prove kinship as a matter of law (NYSCEF Doc No. 48, affirmation of respondent's counsel in opp of mot ¶ 11).[FN6]
For these reasons, the administrator advances that he is, at the least, entitled to a kinship hearing concerning petitioner for exploratory purposes.
As an initial matter, the Court notes that petitioner's removal application fails to cite a specific ground under SPCA 711 [FN7]
; but upon closer reading, it appears to hinge on the administration petition being granted under false pretenses which most closely coincides with SCPA 711 (4). "SCPA 711 (4) provides for the revocation of a fiduciary's letters where 'the grant of his letters was obtained by a false suggestion of a material fact'" (Matter of RYTVOC, Inc., 38 Misc 3d 1222[A], 2013 NY Slip Op 50217[U], *3 [Sur Ct, Nassau County 2013], quoting SCPA 711 [4]). "A fiduciary who misstates a material fact in his petition for letters is subject to removal regardless of whether the material misrepresentation was made in good or bad faith" (Matter of RYTVOC, Inc., 2013 NY Slip Op 50217[U] at *3; see Matter of Barasch, 32 Misc 2d 548, 549 [Sur Ct, Nassau County 1962]).
"The circumstances set forth under SCPA 711 justifying a decree suspending or revoking letters issued to a fiduciary or suspending . . . include where the fiduciary is unfit for the execution of his or her office by reason of having 'wasted or improperly applied the assets of the estate, . . . or otherwise improvidently managed or injured the property committed to his [or her] charge, . . . or by reason of other misconduct in the execution of his or her office or dishonesty, drunkenness, improvidence or want of understanding'" (Matter of Cozzoli, 224 AD3d 747, 748 [2d Dept 2024], [internal brackets omitted], quoting SCPA 711 [2]). "The removal of a fiduciary . . . pursuant to SCPA 711 . . . may only be decreed 'when the grounds set forth in the relevant statutes have been clearly established'" (Matter of Cozzoli, 224 AD3d at 749, quoting Matter of Duke, 87 NY2d 465, 473 [1996]). "The Surrogate may remove [a fiduciary] without a hearing only where the misconduct is established by undisputed facts or concessions, where the fiduciary's in-court conduct causes such facts to be within the court's knowledge[,] or where facts warranting amendment of letters are presented to the court during a related evidentiary proceeding" (id. at 472-473 [citations omitted]). 
"While courts have the power to remove a fiduciary, that power is exercised sparingly and [*4]only where the record demonstrates a danger to the estate . . . if removal is denied" (Matter of Cozzoli, 224 AD3d at 749 [internal brackets, quotation marks, and citations omitted]; accord Matter of La Pava, 244 AD3d 1113, 1115 [2d Dept 2025]; see Matter of Fakhra, 80 Misc 3d 482, 487 [Sur Ct, Monroe County 2023], lv dismissed 232 AD3d 1327 [2024]). 
Given the procedural posture, the Court must hold an evidentiary hearing in this proceeding to test the credibility and veracity of the parties based on the conflicting and disputed allegations. "While it is not necessary for Surrogate's Court to conduct a hearing in cases where facts are undisputed, 'where the respondent interposes an answer which denies a material fact contained in the petition and no motion is made to dismiss for failure to state a cause of action, the Surrogate must conduct a hearing" (Matter of Greenway, 241 AD2d 735, 736 [3d Dept 1997] [internal brackets and ellipses omitted] [emphasis added], quoting 2 Cox—Arenson—Medina, NY Civ Prac, Surrogate's Court Procedure Act § 713.02, at 7—209). "[T]he case law makes clear that removal of a fiduciary is a 'most serious' course of relief" (Matter of Burkich, 12 AD3d 766, 768 [3d Dept 2004], quoting Matter of Duke, 87 NY2d at 473).
Applying the governing legal framework here, the administrator — who is the respondent in this removal proceeding — interposed a verified answer to the SCPA 711 removal petition. In it, he denies the various allegations in the petition and raises three affirmative defenses assailing the petition: (1) that it fails to state a cause of action; (2) fails to set forth sufficient detailed allegations pursuant to CPLR 3016 (b) ["Particularity in specific actions"]; and fails to comply with SCPA 304 ["Contents of petition"] (NYSCEF Doc No. 45, answer). There is no question that the respondent-administrator's answer denies many material allegations of the petition. "In such a situation, with no evidence [whatsoever], no reviewable record is presented, and it is clear that a hearing must be held at which evidence is taken" (Matter of Burns, 1 AD2d 505, 507 [3d Dept 1956]; see Matter of Greenway, 241 AD2d at 736; Matter of McDonald, 160 AD 86, 87 [1st Dept 1914], affd 211 NY 272 [1914]).
The record discloses that prior to filing the petition for letters, Mr. Richard Rivera (the decedent's brother) retained experienced counsel to aid him in submitting paperwork for administration proceeding. The administration petition reflects in Section 7 that other than the appointed administrator who is listed as the decedent's brother, no other person was listed as a surviving distributee or other necessary party (see NYSCEF Doc No. 1, petition at 3). The affidavit of heirship submitted by Gannecilli, the decedent's cousin, reflects, among other things, that she knew the decedent for the duration of her life (63 years), specifies the dates of death of the administrator and the decedent's parents, and lists only them as their children (see NYSCEF Doc No. 13, affidavit of heirship).
As outlined above in the parties' verified pleadings and the administrator's affidavit in opposition, his account of his family life and history with the decedent, coupled with petitioner's declaration that he is the decedent's half nephew, raise genuine issues of material fact(s) concerning kinship, including but not limited to, the unknown existence of the decedent's potential extended family. Indeed, such can only be established by admissible proof consisting of, inter alia, live testimony and authenticated proof of marriages and birth certificates and/ or acknowledgment(s) of paternities concerning the decedent, the parties, their parents, and extended family.
"If a representation is shown to be false, the letters of a fiduciary may be revoked regardless of whether the misrepresentation was made innocently, or in good faith. The reason for this rule is that in revoking letters of a fiduciary, the court is carrying out its responsibility to have the proper person administer the estate. The thrust of a proceeding to revoke is not to punish the fiduciary as an individual, but to protect the estate" (Matter of D'Onofrio, 97 Misc 2d 250, 252 [Sur Ct, Bronx County 1978]). Here, there is nothing to suggest that the administrator is not protecting the estate or harming it. Petitioner makes a blanket, self-serving assertion that he is the decedent's half-nephew and, furthermore, that the administrator, in a calculated and deliberate manner, purposefully failed to list potential distributees, including him. The administrator says differently. 
The issue, therefore, distills to whether the administrator falsely represented information about potential distributees in his petition for letters of administration, and his arguable misrepresentation therein is sufficient to disqualify him as a fiduciary on the ground of misconduct (see Matter of Cunningham, 63 AD3d 1061, 1062 [2d Dept 2009]). If the petition upon which the administrator was originally appointed did contain false representations of material facts, his letters may likely be revoked (see Matter of Beard, 135 AD2d 1122, 1122 [4th Dept 1987]). Case law seems to suggest that a Surrogate may revoke letters pursuant to SCPA 711 (4), even though the allegations in the petition for letters of administration may have been made in good faith (see Matter of Beard, 135 AD2d at 1122; Matter of Meyer, 93 Misc 2d 1051, 1056 [Sur Ct, Rockland County1978]). That said, the issue of what information amounted to a false suggestion of a material fact in the administration petition is not quite ripe. In other words, this Court is unable to reach that issue by a justified and reasoned adjudication (cf. Matter of King, 147 AD3d 1286, 1287 [3d Dept 2017]; Matter of of Lewis, 17 Misc 3d 1133[A], 2007 NY Slip Op 52244[U], *1-2 [Sur Ct, Bronx County 2007]).
The Court, at this juncture, is not in a position to credit and believe one party over the other. The undersigned finds that the limited proof is sufficient for the Court to deny that branch of petitioner's application to temporarily suspend the administrator as the estate fiduciary (see Matter of Greenway, 241 AD2d at 736). Based on this limited, undeveloped record and the sparse submissions in connection with petitioner's motion mainly predicated on the parties' competing filings and factual allegations, the Court is without sufficient information to conclusively determine petitioner's assertion that the administrator's claimed failure to list petitioner and the other potential distributees in the administration petition amounted to a "false suggestion of a material fact" (SCPA 711 [4]), so as to warrant immediate revocation of the letters of administration issued to the respondent-administrator (cf. Matter of King, 147 AD3d at 1287). Said succinctly, the Court cannot yet decide whether the administrator misstated a material fact or made a material misrepresentation in his administration petition (see Matter of RYTVOC, Inc., 2013 NY Slip Op 50217[U] at *3; Matter of Barasch, 32 Misc 2d at 549). Given the uncertain circumstances here and the scant record, the Court is unable to "conclusively determine the factual issues presented on the merits" at this early stage of the proceeding (see Matter of Greenway, 241 AD2d at 736). 
As a further ancillary matter, SCPA 1001 governs the application for original letters of administration. It requires that letters be issued to persons who are the distributees of deceased individuals who died intestate, and who are eligible and qualify, in a specified order. "Priority of right is based primarily upon the nearness of relationship and the extent of the interest" (Matter of Beard, 135 AD2d at 1122). Critically here, the administrator, as the decedent's sibling of whole [*5]blood, has statutory priority to be appointed administrator of the estate over petitioner, who claims that he is an alleged paternal half nephew (see SCPA 1001 [1] [e]; cf. Matter of Sheppard, 63 AD3d 1358, 1358 [3d Dept 2009]). At this point, there is sufficient reason to maintain (not revoke) the letters of administration of the decedent's estate because there is no dispute that the administrator, who is the decedent's whole brother, is the decedent's lawful distributee and he filed the initial petition for letters (compare Matter of Beard, 135 AD2d at 1122). 
The undersigned declines to order a judicial accounting. "[T]he parameters of an account are generally a matter of discretion for Surrogate's Court" (Matter of Metz, 238 AD3d 1477, 1477-1478 [4th Dept 2025]). "SCPA 2205 provides, inter alia, that the Surrogate's Court may at any time, upon it appearing that it is for the best interests of the estate, make an order requiring a fiduciary to file an intermediate . . . within such time and in such manner as directed" (Matter of Baldassare, 233 AD3d 859, 860 [2d Dept 2024]; see SCPA 2205 [1] [a]). The Court declines to compel the administrator to file an account at this time since it would not be in the best interests of the estate (see Matter of Baldassare, 233 AD3d at 860; Matter of Mastroianni, 105 AD3d 1136, 1138 [3d Dept 2013]). Ordering the administrator to account now may cost the estate unnecessary administrative expenses. 
It is for these reasons that the Court shall hold in abeyance all of the branches of petitioner's underlying motion made by Order to Show Cause. The Court declines to grant that branch of petitioner's motion requesting the outright revocation of the letters of administration issued to the respondent, Richard Rivera since he has answered by contesting petitioner's factual allegations (see Matter of Greenway, 241 AD2d at 736; Matter of Fakhra, 80 Misc 3d at 487). The interim relief that was temporarily granted in the Order to Show Cause, signed September 19, 2025, shall continue to remain in effect as explicitly set forth herein.[FN8]

To the extent not specifically addressed herein, the parties' remaining contentions have been examined and are either rendered academic or without merit. Any other relief requested that is not squarely addressed herein is denied based on this decision. Accordingly, it is hereby:
Ordered that the motion of petitioner Jerry Micka, by Order to Show Cause signed September 19, 2025 (mot. seq. no. 1) shall be held in abeyance pending an evidentiary hearing on petitioner's motion and the underlying pleadings; and it is further
Ordered that pending an evidentiary hearing and determination of this proceeding, the respondent-administrator RICHARD RIVERA is restrained and enjoined from withdrawing any funds from the estate account(s) of the decedent, Zita Rivera a/k/a Zita Maria Rivera; and it is further
Ordered that the attorneys shall personally appear before this Court on Friday, March 27, [*6]2026, at 2 p.m. for a conference and all further proceedings thereon.
The foregoing constitutes the interim decision and order of this Court.
Dated: March 6, 2026
Carmel, New York
E N T E R:
HON. ANTHONY R. MOLÉ
SURROGATE

Footnotes

Footnote 1:The Court also takes judicial notice of all of the filings in this proceeding on the NYSCEF system (see generally Kazantzis v Cascade Funding RM1 Acquisitions Grantor Trust, 217 AD3d 410, 411 [1st Dept 2023]).

Footnote 2:The administrator commenced the prior administration on January 1, 2024 when he filed the requisite petition (dated November 30, 2023).

Footnote 3:In the Citation and signed Order to Show Cause, the Court granted petitioner limited interim relief by restraining and enjoining the administrator from withdrawing any monetary funds from the estate account(s) or transferring and/or conveying the decedent's home situated in the Village of Brewster, pending a hearing and determination of those discrete issues.

Footnote 4:Petitioner resides in the state of New Mexico. The administrator lives in Pennsylvania.

Footnote 5:For whatever reason, petitioner references to Gannecilli's affidavit of heirship as "supplemental" in his petition and moving papers; however, the record does not reflect that there was a prior or initial version of Gannecilli's affidavit that was filed and later supplemented.

Footnote 6:"FamilySearch resources help millions of people around the world discover their heritage and connect with family members." The organization "help[s] people discover their family's history through [a] website, mobile apps, and in-person help at over 5,000 local family history centers" (FamilySearch, About, https://www.familysearch.org/en/about/ [last accessed Mar. 6, 2026]).

Footnote 7:SCPA 711 is entitled "Suspension, modification or revocation of letters or removal for disqualification or misconduct."

Footnote 8:On the return date of the Citation, the estate attorney informed that the decedent's house in the Village of Brewster was sold. Putnam County's public land records confirm as much, showing that the decedent's home was sold to a third party in or around May of 2024.